# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| KAREN E. MILES,<br>　　　　　Appellant, | DOCKET NUMBER<br>SF-0752-21-0232-I-1 |
| v. | |
| DEPARTMENT OF DEFENSE,<br>　　　　　Agency. | DATE: August 30, 2023 |

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Karen E. Miles, APO, AP, pro se.

Douglas Frison, APO, AP, for the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

### FINAL ORDER

¶1　　　　The appellant has filed a petition for review of the initial decision, which sustained her removal based on three charges of misconduct. For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, and REVERSE the appellant's removal.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

**BACKGROUND**

¶2        The appellant was employed by the Department of Defense Education Activity (DODEA or agency) as a Teacher at Osan Middle High School in Osan, Korea, where she taught sixth and eighth grade children.  Initial Appeal File (IAF), Tab 7 at 18, Hearing Recording (HR) (testimony of the appellant). On February 26, 2020, DODEA in Korea moved from physical classroom learning to distance learning in response to the COVID-19 pandemic.  HR (testimony of the Principal).[2]  As a result, staff and students began utilizing various online educational tools, and teachers were instructed to exercise "maximum flexibility" with students in light of the COVID-19 restrictions.  *Id.*

¶3        On April 28, 2020, the appellant emailed the parents of I.S.,[3] one of her sixth grade students, alerting them that I.S. had multiple assignments missing in Math class, and had an incomplete for the quarter.[4]  IAF, Tab 10 at 180-81; HR (testimony of the appellant).  On April 30, 2020, I.S.'s mother sent the appellant an email which contained links to Google Drive files that I.S.'s mother claimed contained the missing work.  IAF, Tab 10 at 179-80; HR (testimony of the appellant).  Subsequently, on May 14, 2020, the appellant emailed I.S. and her parents, stating:

> Good afternoon [I.S.]
>
> Thank you for immediately contacting me.  Please understand that there is usually only a ten day time frame to change a grade of (I)

---

[2] The individual who was the Principal of the school where the appellant worked during all times relevant to this appeal is now the agency's Pacific South District Superintendent.  HR (testimony of the Principal).  We will refer to him as the Principal as that was his role in this case.

[3] For clarity purposes, we use the same initials for the student as the administrative judge used in the initial decision.

[4] The record does not contain actual copies of the referenced emails.  Instead, the record only contains a statement from the Principal, in which he appears to have cut and pasted the relevant emails into his statement, along with his own commentary.  IAF, Tab 10 at 155-90.  The agency did not explain why it failed to submit actual copies of these emails, but the appellant has not objected to the authenticity of the recreated emails.

[incomplete] that was given to you in Quarter 3 to avoid documenting the grade of "F" that you have actually earned for Math for Quarter 3. Please complete those assignments as soon as possible.

I am always available in all Google Meet Sessions during our class period to provide instructional support.

IAF, Tab 10 at 149, 158.[5]

¶4      Approximately 2 weeks later, I.S.'s father responded to the appellant, copying the Principal and the Assistant Principal, requesting that I.S.'s grades be "calculated correctly," claiming that I.S. had submitted the missing work and that it was "completely unacceptable and bordering on cruel" for the appellant to tell I.S. that she had actually earned an F. *Id.* at 155-56. In that same email, I.S.'s father included links to the Google Drive, claiming that it contained the missing assignments, and identifying what he believed to be errors in the appellant's grading. *Id.* at 156-58.

¶5      The Principal asked the appellant about the accusations made by I.S.'s father, and the appellant explained that she only graded students' problem set assignments, quizzes, and assessments, and she confirmed that her gradebook was accurate. *Id.* at 159-60. However, after further demands by I.S.'s parents, the Principal independently reviewed the Google Drive, determined that the missing assignments had been submitted, and found that the appellant incorrectly graded I.S. as earning a D or F when she had actually earned an A.[6] HR (testimony of the Principal).

¶6      Effective February 26, 2021, the agency removed the appellant based on three charges of misconduct. IAF, Tab 10 at 18-21, 143-46. The first charge, use of poor judgment in dealing with students and parents, was supported by three

---

[5] Although it appears that there was an email from I.S. to which the appellant was responding, there is no copy of that email in the record.

[6] A student's third quarter grades were especially significant because, per the agency's pandemic grading policy, a student's third quarter grade carried over to the fourth quarter. HR (testimony of the Principal).

specifications. *Id.* at 143-44. The first specification referenced the May 14, 2020 email as discussed above. *Id.* at 143. The second specification referenced a chat message the appellant sent to a student while playing an instructional video during class, telling a student "[i]t is not the wrong video. You would be aware of that if you actually reviewed it." *Id.* The third specification referenced an email the appellant sent to I.S. and her parents, in which she instructed the parents to stop sending I.S.'s practice work, and told them that I.S.'s sister should teach her. *Id.* at 143-44. In support of the agency's second charge, negligent performance of duty, the agency alleged that between April and June 2020, the appellant failed to properly receive and grade the work of I.S., which required others to grade I.S.'s work and correct her error. *Id.* at 144. Finally, in the third charge, the agency charged the appellant with inattention to duty, alleging that she failed to appear for a scheduled meeting with a District Instructional Systems Specialist (ISS), and did not notify him that she would not be attending the meeting. *Id.*

¶7   The appellant filed a Board appeal challenging her removal, IAF, Tab 1, and after holding a hearing, the administrative judge issued an initial decision affirming the removal, IAF, Tab 33, Initial Decision (ID). First, he found that the agency proved the first and second specifications of the first charge, but it did not prove the third specification. ID at 12, 14-15. He did, however, find that the agency proved its second and third charges in full. ID at 21, 29. Then, he denied the appellant's claim of equal employment opportunity (EEO) retaliation, finding that she failed to show by preponderant evidence that her EEO activity was a motivating factor in her removal. ID at 34-35. Similarly, the administrative judge denied the appellant's claim that the agency violated her due process rights, finding that she received notice of the charges, an opportunity to respond, and had failed to establish that the deciding official considered ex parte communications or otherwise acted improperly. ID at 36-37. Thus, after finding that the agency

established nexus and removal was within the bounds of reasonableness, the administrative judge affirmed the appellant's removal.  ID at 37-41.

¶8    The appellant has filed a petition for review, challenging, among other things, the administrative judge's findings sustaining the agency's charges, and arguing that the agency retaliated against her because of her EEO activity[7] and violated her due process rights by considering past discipline without notifying her.[8]  Petition for Review (PFR) File, Tab 3.  The agency did not respond to the appellant's petition for review.[9]

## DISCUSSION OF ARGUMENTS ON REVIEW

¶9    Generally, in an adverse action appeal, an agency must prove its charge by a preponderance of the evidence, establish a nexus between the action and the efficiency of the service, and establish that the penalty it imposed is within the tolerable bounds of reasonableness.  *Hall v. Department of Defense*, 117 M.S.P.R.

---

[7] Although her allegations are vague and unclear, to the extent that the appellant argues that the agency retaliated against her by mishandling her permanent change of station orders, PFR File, Tab 3 at 32-34, the issue before the Board in this appeal is her removal, and because the actions complained of occurred after her removal, we do not address it further.

[8] To the extent that the appellant argues that the administrative judge abused his discretion by not allowing her "to use sworn depositions as evidence in support of her verbal testimony," the record does not support her argument.  PFR File, Tab 3 at 10.  The only deposition the appellant references is the deposition of the Assistant Principal, who testified at the hearing, and there is no evidence that the administrative judge prevented the appellant's representative from using the deposition for impeachment purposes.  *Id.* at 10-11; HR (testimony of the Assistant Principal).  Accordingly, the appellant has failed to show that the administrative judge abused his discretion.

[9] The appellant attaches multiple pages of exhibits to her petition for review, including copies of awards she received, email communications, student progress reports, agendas, agency memoranda, agency policies, and recorded meetings with the Principal regarding a previous suspension and a progress report.  PFR File, Tab 3 at 16, 36-103, Tab 4.  The appellant has not provided any explanation as to why these documents were not submitted prior to the close of record, only stating that this "direct evidence" was not submitted by the agency or her representative.  *Id.* at 11.  Having reviewed the documents, we find nothing relevant to the issues at hand, and thus, because the evidence is neither new nor material, we do not address it further.

687, ¶ 6 (2012). An agency must prove all of the elements of the substantive offense it charged against the appellant and a failure to do so will cause the Board to not sustain the charge. *King v. Nazelrod*, 43 F.3d 663, 666 (Fed. Cir. 1994). Here, we do not find that the agency proved its charges against the appellant, and thus, her removal cannot be sustained.

¶10     As set forth below, we first address the agency's second charge, negligent performance of duty, and find that the agency did not prove that the appellant failed to properly receive and grade I.S.'s work, and thus, it did not prove its charge. Next, because we find that there is insufficient evidence establishing that the appellant erred in grading I.S.'s work, we also find that the agency failed to prove that the May 14, 2020 email constituted use of poor judgment, i.e., the first specification of the first charge. Then, because we find that the agency failed to prove that the appellant's comment regarding the video, i.e., the second specification of the first charge, constituted use of poor judgment, we find that the agency failed to prove its first charge in its entirety. After that, we find that the agency failed to prove its third charge of inattention to duty, as we do not find that a single missed meeting with a peer, sought and arranged solely by the appellant, constitutes actionable misconduct. We then turn to the appellant's affirmative defenses, finding that the administrative judge correctly found that the appellant failed to establish her claim of EEO retaliation or a due process violation. Because we find that the agency failed to prove any of its charges, we order that the appellant's removal be reversed.

There are sufficiently sound reasons to set aside the administrative judge's credibility determinations and find that the agency failed to prove its second charge, negligent performance of duty.

¶11     The administrative judge, crediting the Principal's testimony over the appellant's testimony, found that the appellant failed to properly receive and grade the work of I.S., requiring the Principal to intervene and grade I.S.'s work. ID at 19-21. He also found that the agency proved that the appellant was required

to accommodate I.S.'s attempts to submit schoolwork and to properly grade I.S.'s work, and that she failed to exercise the degree of care required under the particular circumstances, which a person of ordinary prudence in the same situation with equal experience would not omit. ID at 21. Accordingly, he sustained the agency's second charge of negligent performance of duty. *Id.*

¶12 An initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and his legal reasoning, as well as the authorities on which that reasoning rests. *Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980). To resolve credibility issues, an administrative judge must identify the factual questions in dispute, summarize the evidence on each disputed question, state which version he believes, and explain in detail why he found the chosen version more credible, considering such factors as: (1) the witness's opportunity and capacity to observe the event or act in question; (2) the witness's character; (3) any prior inconsistent statement by the witness; (4) a witness's bias, or lack of bias; (5) the contradiction of the witness's version of events by other evidence or its consistency with other evidence; (6) the inherent improbability of the witness's version of events; and (7) the witness's demeanor. *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987). The Board must defer to an administrative judge's findings regarding credibility when, as here, they are based, either explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing, and the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). Specifically, the Board has found that it does not owe deference to an administrative judge's credibility determinations when his findings are incomplete, inconsistent with the weight of the evidence, and do not reflect the record as a whole. *Thomas v. Department of the Army*, 2022 MSPB 35, ¶ 8.

¶13        After an extensive review of the record, we find that there are sufficiently sound reasons to overturn the administrative judge's credibility determinations. First, the administrative judge's findings are incomplete, because there is critical evidence missing in the record, namely, what documents the Principal viewed when he reviewed the Google Drive files purportedly containing I.S.'s missing assignments, and the assignments that were incorrectly graded. Copies of these documents are absent from the record, and while the Principal testified that there were documents in the Google Drive files that he reviewed, he did not describe the contents of the documents, detail how the grading was incorrect, or even clarify which version of the Google Drive files he viewed. HR (testimony of the Principal). This final point is especially significant because I.S.'s parents sent the Google Drive files four separate times—on April 30, 2020, to the appellant, on May 26, 2020, to the appellant and the Principal, and on June 8 and June 9, 2020, to the Principal—and thus, there are four sets of Google Drive links that the Principal could have viewed. IAF, Tab 10 at 155-58, 161-63, 173-75, 180-81. Indeed, the appellant stated in a sworn statement that the Google Drive files sent to her on April 30, 2020, contained examples, exercises, and classwork that I.S. had copied from class lessons that were not part of the graded assignments, but that I.S.'s father later sent "a modified version of that drive."[10] *Id.* at 192. Despite the fact that it is the agency's burden of proof, the agency never introduced any evidence regarding the specific contents of the Google Drive files reviewed by the Principal, nor did it rebut the appellant's claim that the initial version was later modified.

---

[10] The appellant stated that I.S.'s father sent the modified version on May 14, 2020, IAF, Tab 10 at 192, however, there is no record of I.S.'s father sending a Google Drive file on May 14, 2020. He did, however, send a Google Drive file on May 26, 2020, two weeks after the appellant sent her May 14, 2020 email. *Id.* at 155-58. Thus, it appears that the appellant merely switched the dates of her own email with the date the father's email.

¶14    In order to determine that the appellant had, in fact, failed to properly receive and grade I.S.'s work, the administrative judge needed to know the work the appellant reviewed and graded, as well as the work the Principal reviewed and graded. The agency failed to present any evidence on this issue, and thus, it is impossible to determine whether the appellant did, in fact, err in her grading. Accordingly, because there is critical evidence missing from the record, we find that the administrative judge's finding that the appellant failed to properly receive and grade I.S.'s work is incomplete. ID at 20-21.

¶15    Furthermore, the administrative judge's findings are inconsistent with the weight of the evidence and do not reflect the record as a whole. First, the record reflects that poor performance in the classroom was not out of character for I.S. The appellant testified that I.S. was largely absent from the virtual classroom, and that she, along with other teachers, had been struggling to get I.S. to log on to classes and complete her work. HR (testimony of the appellant). The appellant's testimony is consistent with her contemporaneous notes documenting I.S. as "[c]ompletely [o]ff the [g]rid (no communication nor turned in assignments)," as well as three graded third quarter Math quizzes and/or assignments showing that I.S. was marked absent. *Id.* at 89-91, 94. In fact, the record shows that I.S. missed assignments in Math in the fourth quarter, a fact that was confirmed by the Principal, as well as missing assignments in Language Arts, a class also taught by the appellant. *Id.* at 71, 74-74, 170-71. I.S. had several missing assignments in other classes as well, including Band and Yearbook, and her first semester grades include an F in Yearbook, a D in Band, and a C- in Integrated Science II. *Id.* at 95-97. Finally, there is no evidence that errors in grading were a typical issue for the appellant, and indeed, the agency did not review or object

to any other grade, including the A the appellant gave to I.S.'s step-sister, who was also in the sixth grade Math class.[11]  HR (testimony of the appellant).

¶16      In conclusion, we find that the administrative judge's findings are incomplete, inconsistent with the weight of the evidence, and do not reflect the record as a whole, and thus, we need not to defer to them, and based on our review of the record, we overturn his credibility determinations. *See Faucher v. Department of the Air Force*, 96 M.S.P.R. 203, ¶¶ 12-18 (2004) (finding that there were sufficiently sound reasons to overturn an administrative judge's credibility determination when his findings were incomplete, inconsistent with the weight of the evidence, and did not reflect the record as a whole).  Further, regardless of whether the Principal was a credible witness as to the Google Drive files that he actually reviewed, we find that there is insufficient evidence to show that the appellant incorrectly graded I.S., and thus, we find that the agency failed to prove the appellant was negligent in her performance of duty.  Accordingly, we reverse the administrative judge's finding sustaining the second charge.  ID at 21.

The agency failed to prove the first specification of its first charge of use of poor judgment in dealing with students and parents.

¶17      The agency's first specification of its first charge, use of poor judgment in dealing with student and parents, is centered on the appellant's May 14, 2020 email to I.S. and her parents, stating, in part, that I.S. had missing assignments and had actually earned an F.  IAF, Tab 10 at 143.  The administrative judge sustained the specification, finding that the agency proved that the appellant told I.S. that she had actually earned an F, when it was the appellant who erred in grading, and thus, her communication was inappropriate.  ID at 12.

---

[11] Although the Principal asserted that he believed the appellant targeted I.S. by giving her an F or D, the evidence does not support this claim.  While the Principal testified that all of the appellant's Math students received As or Bs except for I.S., the grades in the appellant's Math class actually ranged from the low 70s to high 90s.  IAF, Tab 10 at 201; HR (testimony of the Principal).  Also, I.S. received an average grade in the appellant's Language Arts class, further undermining the Principal's speculation.  Accordingly, we discern no evidence of any targeting by the appellant.

¶18    The appellant does not dispute that she sent the May 14, 2020 email, and the record contains a copy of the email establishing that she made the statements. IAF, Tab 10 at 149, 158.  However, we do not find that the email evidences poor judgment.  The appellant's email was not disrespectful or aggressive in tone—it was merely informing a student, and her parents, that there was missing work, and that she currently had an incomplete but had actually earned an F.  *Id.*  In fact, the wording used by the appellant was consistent with the agency's instructions to teachers regarding the language to use when discussing grades, i.e., earning a grade versus giving a grade.  HR (testimony of the appellant, testimony of the Principal).

¶19    Nevertheless, the agency argued that the email was inappropriate because it was the appellant who had inaccurately graded I.S.'s work, and thus, I.S. did not actually earn an F.  IAF, Tab 10 at 143; HR (testimony of the Principal).  However, as we explained in detail above, the agency failed to establish that the appellant incorrectly graded I.S.'s work.  Accordingly, we do not find that the appellant's email evidenced use of poor judgment and we reverse the administrative judge's finding sustaining the first specification.[12]  ID at 12.

The agency failed to prove the second specification of its first charge of use of poor judgment in dealing with students and parents.

¶20    The appellant does not dispute the factual content of the second specification, i.e., that she responded to a student, who told her she was playing the wrong video, in a chat message by stating, "[i]t is the correct video.

---

[12] During the hearing, the Principal testified extensively regarding other complaints received from parents regarding the appellant's tone.  HR (testimony of the Principal).  The Board will not sustain an agency action on the basis of charges that could have been brought, but were not.  *Stuhlmacher v. U.S. Postal Service*, 89 M.S.P.R. 272, ¶ 14 (2001).  Further, the Board adjudicates an agency's charge as it is described in the agency's proposal and decision notices.  *Id.*; *Rackers v. Department of Justice*, 79 M.S.P.R. 262, 276 (1998), *aff'd*, 194 F.3d 1336 (Fed. Cir. 1999) (Table).  Thus, because these other complaints are not included in the proposal notice, they are not relevant to the issues at hand.  IAF, Tab 10 at 143-46.

You would be aware of that if you actually reviewed it." IAF, Tab 10 at 143, 151; HR (testimony of the appellant). The agency alleged that the appellant's comment was inappropriate behavior for a teacher because it singled out a child in an open forum in front of her peers, and placed the child in an embarrassing position. HR (testimony of the Principal, testimony of the deciding official). The administrative judge agreed, sustaining the second specification, finding that the appellant posted a "negative sounding message to the entire class" that exhibited poor judgment. ID at 13-14.

¶21    While we acknowledge, as the appellant does, that she did not use model language here, we do not find this single, isolated comment to be sufficiently egregious or offensive as to constitute poor judgment. HR (testimony of the appellant). Neither the student, nor her parents, reported or complained about the comment,[13] and there is no statement from the student or her parents claiming that she was embarrassed or humiliated by the fairly harmless comment. At most, the statement is slightly harsh, but it does not rise to the level of poor judgment as charged by the agency. IAF, Tab 10 at 143. Accordingly, because the agency failed to prove the two specifications constituting the first charge,[14] we reverse

---

[13] The comment was reported by the parent of another child in the class. IAF, Tab 10 at 153.

[14] The administrative judge did not sustain the third specification, which alleged that the appellant told I.S.'s parents to stop sending I.S.'s practice work and to have I.S.'s sister, who was also in the appellant's sixth grade Math class, teach I.S. ID at 14-15. Specifically, the administrative judge found that the specification could not be sustained because the agency had failed to put forth sufficient evidence to substantiate the allegation, because the agency never received a copy of the email in which these statements were allegedly made. *Id.* The agency has not challenged the administrative judge's finding on review, and we discern no basis to disturb his findings. *Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 106 (1997) (stating that the Board will not disturb an administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on issues of credibility); *Broughton v. Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987) (same).

the administrative judge's finding sustaining the charge of use of poor judgment in dealing with student and parents.  ID at 15.

The agency failed to prove its third charge of inattention to duty.

¶22    The agency charged the appellant with inattention to duty based on a single specification, alleging that she failed to attend a scheduled meeting with the ISS.  IAF, Tab 10 at 144.  The administrative judge sustained the charge, crediting the testimony of the ISS, finding that the ISS and the appellant had a scheduled meeting, which the appellant did not attend, nor did she notify the ISS that she would not be attending.  ID at 26-28.  He also found that the appellant had a duty to appear for scheduled meetings, during duty hours, and that her failure to attend this meeting constituted inattention to duty.  ID at 28-29.

¶23    The facts underlying the charge are that, while off-duty, the appellant ran into the ISS and approached him about receiving additional training regarding a teaching program.  HR (testimony of the appellant, testimony of the ISS).  It was during this encounter that the ISS believed a meeting had been scheduled, although the appellant contests this, asserting that they did not agree to meet at a specific date or time.  HR (testimony of the appellant, testimony of the ISS).  Nevertheless, the appellant did not meet with ISS on the date listed in the agency's specification.[15]  HR (testimony of the appellant, testimony of the ISS); IAF, Tab 10 at 144.

¶24    However, even assuming a meeting was scheduled, we do not find that such conduct is actionable.  An agency may take an adverse action against an employee "only for such cause as will promote the efficiency of the service."  5 U.S.C. § 7513(a).  "Cause" under section 7513(a) generally connotes some specific act or omission on the part of the employee that warrants discipline, and an agency charge that does not set forth actionable conduct cannot be sustained.  *Gonzalez v. Department of Homeland Security*, 114 M.S.P.R. 318, ¶ 10

_____

[15] The ISS rescheduled the meeting without objection.  IAF, Tab 10 at 214, 216.

(2010). The crux of the agency's charge is that the appellant failed to appear for a meeting with the ISS, a peer, that she scheduled for her own edification. There is no evidence that her supervisors arranged for her to attend the meeting, expected her to attend the meeting, or even that she was required to seek additional training. There is also no evidence that the ISS was a supervisor or manager, and thus, while missing a scheduled meeting is perhaps rude, there is no evidence that the appellant was under any obligation to attend this meeting. Therefore, accepting the allegations are true, while the appellant's behavior may be characterized as inconsiderate, we fail to see how her failure to attend one meeting with a peer constitutes actionable misconduct. Accordingly, the agency's third charge cannot be sustained.

<u>The appellant failed to prove her affirmative defense of EEO retaliation.</u>

The appellant, both below and on review, argued that her removal was in retaliation for her protected EEO activity, which included filing her own EEO complaint, submitting a declaration in support of a former coworker's EEO complaint, and requesting reasonable accommodation.[16] IAF, Tab 26 at 5-6; PFR File, Tab 3 at 7, 19, 25-26, 31-34. The administrative judge found that the appellant had "offered little evidence or argument" to support her claim, and thus, she failed to show that her EEO activity was a motivating factor in her removal. ID at 34-35. Given that the appellant testified her removal was the result of retaliation because there was no other explanation, we agree that the appellant has offered nothing more than conclusory statements in support of her claim. HR (testimony of the appellant). Accordingly, we discern no basis to disturb the

---

[16] After the initial decision was issued, the Board issued *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 44-47, which clarified that requests for reasonable accommodation and opposing disability discrimination are activities protected under the Americans with Disabilities Act, and thus, a "but-for" standard is applicable. However, because we agree with the administrative judge that the appellant failed to prove motivating factor, ID at 34-35, she necessarily failed to prove "but-for" causation," and thus, the administrative judge did not commit prejudicial error.

administrative judge's findings. *Crosby v. U.S. Postal Service*, [74 M.S.P.R. 98](#), 106 (1997) (explaining that Board will not disturb an administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on issues of credibility); *Broughton v. Department of Health and Human Services*, [33 M.S.P.R. 357](#), 359 (1987) (same).

The appellant failed to prove that the agency violated her due process rights.

¶25    On review, the appellant challenges the administrative judge's finding that the agency did not violate her due process rights, claiming that the agency considered "duplicitous disciplinary and counseling matters that predated the notice of proposed removal" and did not notify her that these matters were being considered. PFR File, Tab 3 at 8, 15. The appellant has not identified any specific disciplinary or counseling matters she alleges were improperly considered, and the agency expressly notified her in the proposal notice that it was considering her disciplinary record, including a letter of reprimand and a 7-day suspension. IAF, Tab 10 at 144. Thus, there is no evidence in the record supporting the appellant's claim that the agency violated her due process rights, and we discern no basis to disturb the administrative judge findings. *Crosby*, 74 M.S.P.R. at 106; *Broughton*, 33 M.S.P.R. at 359.

## ORDER

¶26    We ORDER the agency to cancel the removal action and to restore the appellant to her TP-1701-CM Teacher (Mixed Middle) position effective February 26, 2021. *See Kerr v. National Endowment for the Arts*, [726 F.2d 730](#) (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶27    We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's

efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶28 We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶29 No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶30 For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

**NOTICE TO THE APPELLANT REGARDING
YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS**

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at Title 5 of the

United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

## NOTICE OF APPEAL RIGHTS[17]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court

---

[17] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

(3) **Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[18]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

---

[18]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD: _____/s/ for_____

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1.  Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2.  The following information must be included on AD-343 for Restoration:

    a.  Employee name and social security number.
    b.  Detailed explanation of request.
    c.  Valid agency accounting.
    d.  Authorized signature (Table 63).
    e.  If interest is to be included.
    f.  Check mailing address.
    g.  Indicate if case is prior to conversion.  Computations must be attached.
    h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2.  Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3.  Outside earnings documentation statement from agency.
4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.
5.  Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a.  Must provide same data as in 2, a-g above.
    b.  Prior to conversion computation must be provided.
    c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.